■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARCEL VACHET, Appellant. [773 NYS2d 455]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Knipel, J.), rendered March 26, 2002, convicting him of manslaughter in the second degree, assault in the first degree, assault in the second degree, and unlawful possession of a firearm in violation of Administrative Code of the City of New York § 10-131 (b) (two counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials.

Ordered that the judgment is affirmed.

In the early morning hours of July 20, 2000, several people were shot with a pellet gun in the immediate vicinity of 190 Jerome Street in Brooklyn, the building where the defendant resided. The building is directly across the street from where the first shooting occurred and within a block of the locations where the other victims were shot. A resident of the building told detectives that she had seen the defendant with a pellet gun in the past. The police located the defendant and he agreed to accompany them to the precinct to discuss the shootings. At the precinct, the defendant denied presently owning a pellet gun, but stated that two of his friends, who had been at the building, owned one. The defendant agreed to canvass the area with the detectives to look for his friends and the detectives promised to take him home afterwards. However, while canvassing the area, the police received information that the defendant had been seen on the roof of 190 Jerome Street during the time in question, and, instead of taking him home, the detectives took him back to the precinct for further questioning.

At the precinct, one of the detectives admonished the defendant for wasting their time, told him that the police knew he was involved in the incident, and asked him to tell the detective what happened. The defendant then admitted that he had been on the roof on the night of the incident. At that point, the detective advised him of his *Miranda* rights (*see Miranda v Arizona*, 384 US 436 [1966]). The defendant waived his rights and gave an oral statement, admitting that he shot at several people. The detective reduced the statement to writing, which was signed by the defendant. After the defendant made the oral and written

statements, he remained in the interview room without handcuffs and was given food and something to drink. He subsequently answered a few more questions. Approximately three hours after his initial statements, the defendant was again advised of his *Miranda* rights and gave a videotaped statement to an assistant district attorney in which he indicated, among other things, that he had hidden two guns in the Jerome Street apartment. Two pellet guns were subsequently recovered from the apartment. The Supreme Court denied those branches of the defendant's omnibus motion which were to suppress the defendant's statements and the guns.

The defendant correctly contends that his oral and written statements should have been suppressed. Considering all the relevant factors, we find that an innocent person in the defendant's position would not have believed he was free to leave when he was returned to the precinct after the canvass (*see People v Macklin,* 202 AD2d 445 [1994]). The defendant's initial statement that he was on the roof was the product of custodial interrogation conducted before the administration of *Miranda* warnings (*see People v Rifkin,* 289 AD2d 262 [2001]; *People v Macklin, supra*). Since there was no pronounced break between his initial statement and his subsequent oral and written statements made after he was advised of his *Miranda* rights, those statements should have been suppressed as well (*see People v Rifkin, supra; People v Macklin, supra*). However, contrary to the defendant's contention, the later videotaped statement, made after the readministration of *Miranda* warnings, was admissible, as it was sufficiently attenuated from the initial taint, as were the guns recovered from the apartment (*see People v Duncan,* 295 AD2d 533 [2002]; *People v Rifkin, supra; People v Morgan,* 277 AD2d 331 [2000]). Consequently, the error in admitting the oral and written statements was harmless (*see People v Nisbett,* 225 AD2d 801 [1996]; *People v Pabon,* 120 AD2d 685 [1986]).

The defendant's remaining contentions are without merit or do not warrant reversal. Altman, J.P., S. Miller, Luciano and Rivera, JJ., concur.